(78 Misc. Rep. 389.)

## LORD et al. v. CRANE.

(Supreme Court, Appellate Term, First Department.   December 6, 1912.)

1. BROKERS (§ 61*)—COMPENSATION—RIGHT TO.

 Where a broker procures a purchaser ready and willing to purchase upon the terms proposed by the vendor, he is entitled to his compensation if the sale fails because the vendor cannot deliver the property free from undisclosed incumbrances, and the broker is not under any implied obligation to find out whether the owner actually has the title which he claims.

 [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 77, 78, 92, 93; Dec. Dig. § 61.*]

2. BROKERS (§ 88*)—COMPENSATION—ACTIONS—EVIDENCE.

 In an action by a broker for his compensation, the question whether the seller misrepresented his title, and was unable to deliver the property free from undisclosed incumbrances, held for the jury.

 [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 121–130; Dec. Dig. § 88.*]

Appeal from City Court of New York, Trial Term.

Action by Walter R. Lord and another against William M. Crane. From a judgment for defendant, and an order denying their motion for a new trial, plaintiffs appeal.  Reversed and remanded.

Argued November term, 1912, before LEHMAN, PAGE, and HOTCHKISS, JJ.

Purdy, Squire & Rowe, of New York City (Allan C. Rowe, of New York City, of counsel), for appellants.

Raymond D. Fuller, of New York City (J. Arthur Hilton, of New York City, of counsel), for respondent.

LEHMAN, J.  The plaintiffs were employed as brokers by the defendant to sell a piece of property in New Jersey.  It was understood by both sides that the defendant had sold some small parts of the property formerly owned by him, and that he desired to sell what remained.  The plaintiffs interested a proposed buyer in the property, and the buyer requested the brokers to procure an exact description of the property owned by the defendant.  The plaintiffs thereupon, according to their own version of the transaction, requested the defendant to give them a description of the property, showing the parts which he still retained.  The defendant thereupon sent them a map showing the dimensions of the property still retained, and also the dimensions of three plots previously alienated. This map was one which the defendant had previously prepared to show the possible development of the property for the purposes of suburban subdivision, and a number of proposed streets were laid out on the map. . The prospective purchaser desired to subdivide the property, if he bought it, according to his own views, and asked the brokers to find out whether the map had been filed, or whether the streets as shown on the map had in any manner been dedicated. The brokers inquired in regard to these matters of the defendant,

who informed them by letter that the map had not been filed. In that letter he added:

"Of course, Ninth avenue and Chestnut street were laid out by the town. The other maps I showed you were only plans laid out by myself, with a view to see how it could be laid out to advantage."

After the receipt of this letter the brokers continued the negotiations, and the parties came to an agreement upon all the terms of the proposed sale, except the exact description to be used in the contract to show the exceptions from the sale of the parts previously sold. To make the description of these exceptions accurate, the deeds previously·conveying these parts were examined, and the description taken from these deeds. One of these·deeds described the property transferred therein by metes and bounds running to and from a street described as "Tenth Avenue." No such street was in existence, and the parties are agreed that the reference in the deed established an easement in the owner of the plot transferred in a proposed street to be placed where "Tenth Avenue" is presumed in the deed to exist. On account of this easement, the purchaser refused to sign the contract, unless the defendant would furnish him with a release of the easement, or allow him the sum of $1,000 upon the purchase price. The defendant did not comply with these conditions, and the sale thereupon fell through.

The plaintiffs have brought this suit for the commissions which they claim that they earned by producing a purchaser ready, able, and willing to make the purchase upon all the terms proposed by the seller. Their claim is based upon two propositions: First, that the sale fell through, owing to the incumbrance of the easement on the property, which the defendant had not disclosed, and which he had represented did not exist; and, second, that thereafter the defendant had promised to procure a release of the easement, or allow the sum of $1,000 upon the purchase price.

It is unnecessary·to consider the evidence bearing upon the alleged promise to procure a release or make an allowance to the proposed purchaser, for the trial justice submitted this question to the jury, and they have decided it against the plaintiffs, who raise no question on this appeal upon this branch of the case. The trial justice, however, refused to leave to the jury the question as to whether the maps and letters sent to the plaintiffs by the defendant amounted to a representation that the property was free from any incumbrance of any easement of a proposed street, and the sole question properly raised by exceptions is the correctness of this refusal.

[1, 2] There is no doubt but that, where a broker procures a purchaser able and willing to enter into a contract upon the terms proposed by the seller, the broker is entitled to his compensation, if the sale falls through because the seller cannot comply with his own proposed terms and deliver the property free from undisclosed incumbrances. The broker is not under any implied obligation to find out whether the owner actually has the title which he claims. In this case, however, the brokers were employed to sell only the property which the defendant still owned after he had made the deeds

to the three parcels of land, which both parties understood were to be excepted from the sale. Under such circumstances, the plaintiffs cannot recover, where the sale falls through by reason of an incumbrance created by one of these deeds, unless they go further and show that the defendant has represented that no incumbrance as to the easement of any street was in existence.

The evidence produced by the plaintiffs, that, after inquiring as to the exact dimensions of the parts previously conveyed, the owner sent a map showing these dimensions, but not disclosing the incumbrance, and then wrote a letter open to the interpretation that no streets, except two actually laid out by the public authorities, were dedicated to the public, is, in my opinion, amply sufficient to require a finding that the owner, expressly or impliedly, represented that no incumbrance other than disclosed by the map existed, and that, if the owner thereafter insisted that the purchaser should take the property subject to an undisclosed incumbrance, the brokers had a right to their commissions, even if the sale was not consummated. It is true that in this case the defendant testified that he referred the brokers to the deeds on record for accurate information as to the parcels to be excepted from the sale, and that the maps were sent and the letters written under circumstances that negatived any inference that they were intended or accepted as a representation. Nevertheless, the plaintiffs had a right to have the question submitted to the jury, and the refusal of the trial justice to do so constituted error, which requires a reversal of the judgment.

Judgment should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.